## Baker et al. v. Murray et al.

March 6, 1942.

John Bentley Anderson for appellants.

Kirtley & Kirtley for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

This is a contest of the will of L. R. Murray, an aged colored man; and the sole ground for a reversal urged by the infant beneficiary and his mother is that the jury's verdict in favor of the contestants was not sustained by sufficient evidence. We have read the testimony and found no basis for that contention.

The will, which omitted all reference to Murray's sister with whom he had resided at intervals during the latter portion of his life, was written on April 24, 1939, by the president of the bank at which Murray had called

for the purpose of procuring a loan to pay off a Federal Farm Loan mortgage. This bank was not the bank at which Murray ordinarily transacted his business, nor was its president, although he had been admitted to practice, Murray's regular attorney. While the attesting witnesses, who were bank employees, and the representative of the Federal Land Bank at whose office Murray and the Bank's President called to ascertain the amount of the Land Bank's loan, testified that Murray was mentally capable, and that they noticed nothing in his conversation or conduct indicating any impairment of his mental faculties, it is obvious that their contacts with him had been limited. There was no medical testimony introduced by the propounders, except that of Dr. C. E. Simpson who examined Murray on April 29, 1939, May 14, 1939, and in November, 1939, and this witness, although he found many physical ailments, declined to state the condition of Murray's mind on the first two occasions, saying, "I did not pay any attention to it. I had a little history of it and I was trying to get his physical condition built up." Later, on being pressed as to whether he observed anything wrong with Murray's mind, he said: "I did not observe anything wrong with it." In answer to a previous question he had specifically declined to state that Murray had sufficient mental capacity to make a will on April 29th or previously. When he examined him in November following minor physical injuries inflicted by a cow, he found him totally insane. Dr. A. J. Gordon, introduced by the contestants, examined Murray on October 31st and November 5th, 1939, and found him "down and out physically and mentally," and shortly thereafter he was committed to an asylum. Dr. Gordon was unable to find any physical injury to which Murray's condition could be attributed.

By the terms of the will, $20 was devised to each of two brothers, and a niece, the appellant, Lavetta Baker. The remainder of the estate was devised, in trust, to his great nephew, the infant appellant, Edwin Baker.

It is true that a number of witnesses testified that they observed nothing wrong in Murray's mental condition, but several of these admitted on cross-examination that they had heard of some of the strange acts attributed to him by witnesses for the contestants, and that many people regarded him as "off" or unbalanced during the years 1938 and 1939. Opposed to the testimony

of the propounders was the testimony of Murray's lawyer and several employees of the bank at which he transacted his business, which clearly showed that though previously alert and successful, his mind had become so impaired in the early part of 1939 as to render him incapable of understanding or transacting business. Other unimpeached witnesses introduced by the contestants testified that during the period referred to Murray would allow his pants to fall off of him in public; that he would whip a tree thinking it was his horse and complain that he could not get the horse to move; that on one occasion he had attempted to place his saddle on a wooden bar thinking it was his horse which was standing nearby; that although previously a capable farmer he had attempted to plant potatoes after cutting off the skin and removing the eyes; and that he had committed many other acts of a similar nature which no man in his right mind would commit.

The physical injuries which he sustained in the fall of 1939, prior to his commitment to an asylum, were caused by his attempting to take his cow home by tying a pole to it with barbed ware. The details of this occurrence were related by a witness for the propounders who declined to answer when asked by contestants' attorneys on cross-examination, "You did not blame the old cow much for running over him, did you?"

The argument of appellants' counsel is largely devoted to the contention that since reputable witnesses testified that Murray was mentally capable on the date and at the time he executed his will, the testimony introduced by appellees as to his condition on other occasions was not sufficient to justify the jury in setting the will aside. It is true that we have many times written that testimony of mental incapacity must bear a reasonable relation to the time of the execution of the will in order to justify such a verdict. But in this case the testimony of contestants amply met that requirement, as well as all others, and not only supported, but fully justified the verdict returned.

Judgment affirmed.